John W. Johnston, Appellant, *v.* James H. McCain.

*Statute of limitations—Fraud—Evidence.*

Where an executor without fraud receives and distributes the amount of a judgment which he is entitled to suppose belonged to his testator, and of which he had no notice to the contrary, he will, after the expiration of six years from the time he received the money, be protected by the statute of limitations against the real owner of the judgment.

Argued Oct. 26, 1898.    Appeal, No. 165, Oct. T., 1898, by plaintiff, from judgment of C. P. Armstrong Co., March T., 1897, No. 195, on trial by the court without a jury. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover money had and received.

The case was tried by GREER, P. J., of the 50th judicial district, specially presiding, without a jury, who reported the following facts and conclusions of law :

FINDINGS OF FACT.

From a careful consideration of the evidence in this case I have reached the following findings of fact:

1. This action of assumpsit was brought on May 6, 1897, to recover from the defendant, J. H. McCain, $1,887.45 with interest, which was collected by W. D. Brandon, Esq., attorney at law in Butler, Pa., on a judgment of Martin Wacherlie v. Barnett Stepp in Butler county, and by him paid over to J. H. McCain, executor of John Gilpin, deceased, by his check dated September 15, 1886, and payable to the order of J. H. McCain, executor.

2. On February 29, 1868, John W. Johnston became the purchaser at sheriff's sale, and received a deed from the sheriff for a tract of land situate in South Buffalo township, Armstrong county, containing 190 acres, known as the "Myers tract."

3. On June 12, 1868, the plaintiff executed and delivered to John Gilpin a letter of attorney authorizing the said John Gil-

VOL. CLXXXVIII—33

pin to sell certain real estate in Armstrong county, granting him full and complete authority in the name of John W. Johnston, and for him to make, execute and deliver deeds for the same, to make contracts for the sale of the same, to collect and secure all purchase moneys, rents, issues and profits, and to distribute the funds so received as follows: (*a*) to pay all taxes, costs and all other charges incurred, or which might from time to time be incurred in taking care of, conveying, protecting or selling said lands or in collecting any of the purchase money or proceeds of or from the same; (*b*) to pay over and distribute the balance remaining, or which might remain, after paying said expenses, to and among the persons or the respective representatives named as cestuis que trust in judgments mentioned. Said distribution to be made among said plaintiffs or cestuis que trust, or their respective representatives, pro rata and in proportion to the interest or portion of the amount of said judgments owned or held by or for them respectively.

4. In pursuance of said power of attorney, on January 22, 1872, John Gilpin, as attorney in fact for John W. Johnston, sold by article of agreement a tract of land in South Buffalo township, Armstrong county, known as the "Myers tract," to Martin Wacherlie and afterwards made, executed and delivered a deed for the same to him, dated February 23, 1875. That to secure the unpaid purchase money, $1,350, a judgment was taken in the name of John W. Johnston v. Martin Wacherlie. A judgment was also entered on February 2, 1875, for the same amount in favor of Martin Wacherlie against Barnett Stepp by John Gilpin, as attorney for Martin Wacherlie. That an exemplification of this judgment was carried to Butler county on February 9, 1875, by John Gilpin as attorney. On January 26, 1880, a præcipe for scire facias was filed in Butler county to revive the lien, signed "J. Gilpin." The writ was served upon the defendant and nothing more done in the matter until January 8, 1885, when McCain's law partner, M. F. Leason, filed his affidavit that from the best information he could obtain the judgment had never been paid, but the same remained open and unsatisfied and on the following day judgment was taken against Stepp by default of appearance for $2,160. The other judgments were revived by scire facias from time to time by John Gilpin up to November 3, 1883, when he died. Prior

to that time the defendant, James H. McCain, had nothing whatever to do with either of said judgments thereafter and was not the attorney of John W. Johnston, either in law or in fact.

5. John Gilpin died testate, having named James H. McCain, the defendant in this case, one of his executors, and to whom alone letters testamentary were issued. Said James H. McCain, together with his then partner, M. F. Leason, under the firm name of McCain & Leason, kept the judgments revived without employment or authority from John W. Johnston and appeared for John W. Johnston in his judgment against Wacherlie, issued sci. fa. and took judgment thereon on February 21, 1885.

6. Martin Wacherlie, by an assignment written by John Gilpin on a separate paper, assigned this judgment against Barnett Stepp to John W. Johnston on February 23, 1875, as collateral security for the payment of the judgment against himself in favor of John W. Johnston. The first knowledge J. H. McCain had of it, Mr. Leason discovered it among the Johnston papers at the hearing before Mr. Fullerton, the master, which was commenced in January, 1893. There was nothing upon the record of the judgment or the exemplification to inform either McCain or Johnston that Johnston was the owner of it, but on the docket of the judgment of Wacherlie v. Stepp, these words appear: " April 2, 1886, receipt of J. Gilpin, assignee of the judgment to Bernard Stepp, dated April 25, 1879 for $400." The receipt filed with the papers reads as follows: " Martin Wacherly v. Barnett Stepp; In the court of common pleas of Armstrong county, No. 358, March term, 1875; Received April 25, 1879, of Barnett Stepp, four hundred dollars on account of debt and interest on the above entitled judgment. John Gilpin, Att'y."

7. James H. McCain, as executor of John Gilpin, deceased, employed W. D. Brandon, Esq., to collect the money on the exemplification of the judgment of Martin Wacherlie v. Barnett Stepp, which he did, and on September 14, 1886, put his receipt to Peter Kramer, sheriff, on the execution docket in Butler county for $1,937.35, and paid it, $1,887.45, by check dated September 15, 1886, drawn on the Butler Savings Bank, to the order of James H. McCain, executor. This check was received

by James H. McCain, as executor of John Gilpin's will, and by him indorsed, and the money carried to his account as such executor more than six years before either McCain or Johnston had heard of the unrecorded assignment to Johnston. James H. McCain, as an individual, did not receive this money, derived no personal benefit therefrom and never appropriated the same or any part of it to his own use.

8. James H. McCain, executor of John Gilpin, filed his second partial account in the orphans' court of Armstrong county on August 3, 1888, in which he charged himself with the money received from W. D. Brandon, Esq., on the check of September 15, 1886, which account was presented for confirmation, exceptions filed and on June 1, 1891, W. D. Patton, Esq., was appointed an auditor to distribute the balance shown to be due the estate by the first and third partial accounts, who did distribute the balance in the hands of the executor, in which was the money now sought to be recovered from the defendant.

9. W. D. Brandon, Esq., had no knowledge that the judgment had been assigned to Johnston until late in the fall of 1897, about the time this suit was ready for trial, eleven years after he collected the money and paid it over to McCain, executor. The check was made payable to J. H. McCain, executor, because McCain had informed him that the judgment belonged to the Gilpin estate. Brandon was not employed by either Wacherlie or Johnston, and neither he nor McCain ever notified Johnston that the money was collected, and never paid or offered to pay it over to him, to whom it rightfully belonged, but the same was paid over to the estate of John Gilpin, deceased, by the said J. H. McCain in mistake and without fraud or concealment.

10. John W. Johnston, before the death of John Gilpin, had employed W. D. Patton, Esq., as his attorney, to procure a settlement with John Gilpin and a distribution of the money in his hands received under the power of attorney. Mr. Patton secured a partial settlement and distribution of the money from Gilpin in 1882, in which settlement Gilpin accounted for the money received of Wacherlie, and Patton was Johnston's attorney at the time he acted as auditor and distributed the money in the hands of the executor as shown by his partial account, in which he, McCain, charged himself with the money now in

dispute. At this time Mr. Patton had no knowledge of the assignment of the Wacherlie judgment to Johnston, and did not have such knowledge until April, 1894.

11. On February 24, 1888, W. D. Patton, Esq., attorney for John W. Johnston, brought an action of account render against James H. McCain, executor of John Gilpin, in Armstrong county, to recover the money Gilpin had received as attorney at law and attorney in fact, in which case the declaration refers to the " Myers Tract " and the judgment of Johnston v. Wacherlie, but does not refer to the judgment of Wacherlie v. Stepp. On the trial of this case before Judge WICKHAM, specially presiding on April 15, 1891, it was proposed to prove by Mr. Shuer, a witness, that McCain had collected money on the Wacherlie agreement since the death of Gilpin, but the offer was overruled because the money had been received subsequent to his death, but there was no offer to prove that McCain had collected the money now in dispute—the judgment of Wacherlie v. Stepp in Butler county—or that it had been assigned to Johnston. At this time none of the parties had personal knowledge of the assignment, or the title being in Johnston. When the auditor, Mr. Fullerton, was hearing the case, the assignment of the judgment became known to all the parties for the first time, and Johnston claimed the money and attempted to recover it, but the auditor, believing he was not entitled to it in that proceeding, decided against him, and on exceptions to his ruling he was sustained by the court, but no appeal was taken to the Supreme Court. At this hearing the Wacherlie deed with receipt for full amount of consideration, the judgments of Johnston v. Wacherlie, and Wacherlie v. Stepp, the exemplification to Butler county, and the agreement between Gilpin and Wacherlie were all put in evidence and considered by the auditor.

12. Gilpin and McCain were partners practicing law in Kittanning from April 1, 1880, until the death of Mr. Gilpin in November, 1883, and on January 1, 1884, McCain and Leason formed a law partnership which existed until 1891, and as such partners they revived the judgment of Johnston v. Wacherlie in Armstrong county.

13. As shown by the report of W. D. Patton, Esq., auditor, filed and confirmed nisi November 3, 1890, the total assets of the estate of John Gilpin, deceased, was $146,207.43, and the

balance of the estate not administered upon $56,842.72, at which time there was in the hands of the executor, J. H. McCain, $23,577.97 for distribution.

## CONCLUSIONS OF LAW.

From a careful consideration of this case I have reached the following conclusions of law which seem to apply to the facts as found:

1. After the death of John Gilpin, his executor, J. H. McCain, had no right or authority to collect the Wacherlie judgment, but having collected it without authority from Wacherlie or from Johnston, the assignee, he is now estopped from denying his liability to pay the same to Johnston, and the action is properly brought against J. H. McCain personally.

2. Under the declaration filed in the action of account render in the case of John W. Johnston v. J. H. McCain, executor of John Gilpin, the plaintiff could not recover money collected by J. H. McCain after the death of John Gilpin, whether the said money was collected by him as executor or individually.

3. John Gilpin was acting throughout as attorney at law and attorney in fact for Johnston. As attorney at law he entered a judgment against Wm. F. Johnston and in favor of J. W. Johnston in 1866 and in 1868 issued execution upon it and sold five tracts of land which he bought in for his client for $5,000. In 1868 he accepted a letter of attorney from J. W. Johnston, authorizing him to take possession of the lands, to sell them or rent them, to collect the rents, purchase money and moneys due on contracts, to pay all costs, charges, expense and taxes out of the proceeds, and to make distribution as expressed in the letter of attorney and this relation continued up until the time of his death.

4. The plaintiff having constituted John Gilpin his attorney at law and attorney in fact to collect money, sell property, etc., and intrusted his business in Armstrong county to him is charged with all the knowledge he had of the transactions with Wacherlie and Stepp, the entries of the judgment, the exemplification of the one to Butler county and the written unrecorded assignment of the same to him—the plaintiff—and cannot now set up his want of personal knowledge to toll the running of the statute in favor of J. H. McCain, who received and paid

over to Gilpin's estate the money sued for without knowledge of the assignment to the plaintiff, and without fraud or fraudulent concealment.   The question is not, what did Johnston know of the condition of his matters in the hands of his attorney and the assignment of this judgment? but what might he have known by the use of the means of information within his reach with the vigilance the law requires of him?

5. The silence of J. H. McCain, his failure to give notice to J. W. Johnston or pay the money to him, especially when he had no knowledge that Johnston was the owner of the Wacherlie judgment, does not constitute a fraudulent concealment.   It was the duty of the plaintiff to ask for information and, upon his failure to do so, the period of limitation began to run when the right of action accrued, that is, when the defendant received the money from Mr. Brandon.

6. It being within the means of the plaintiff to have full knowledge and understanding of his business affairs in the hands of his attorney, of the assignment of the Wacherlie judgment to him, the exemplification to Butler county, the revival thereof and execution thereon, the sheriff's sale of Stepp's land, Mr. Brandon's receipt to Sheriff Kramer on the execution docket for the money, the defendant's account as executor in the orphans' court showing himself charged with the same, the plaintiff cannot set up the fact that he was not informed of this to toll the running of the statute in favor of the defendant.

7. The defendant having received the money in suit on October 16, 1886, and no suit having been brought to recover the same until May 6, 1897, the right of action commenced at the time of the receipt of the money, and no suit having been brought for more than six years thereafter, and there being no evidence of any act, matter or thing on the part of the defendant to toll the running of the statute, the plaintiff's action is barred by the statute of limitations, and the judgment must be for the defendant.

*Error assigned* among others was in entering judgment for defendant.

*W. D. Patton* and *Ross Reynolds*, with them *G. D. Albert*, for appellant, cited Johnston v. McCain, 145 Pa. 531 ; McCain

v. Peart, 145 Pa. 516; Kennedy v. McCain, 146 Pa. 63; Gilpin's Est., 138 Pa. 143; Kisterbock's App., 51 Pa. 483; Shoemaker v. Stiles, 102 Pa. 549; Mitchell v. Buffington, 10 W. N. C. 361; Trickett on Limitations, sec. 205; Lewey v. Fricke Coke Co., 166 Pa. 536.

*M. F. Leason*, with him *J. W. Christy*, for appellee, cited Heebner v. Worrall, 38 Pa. 376; Clark v. Partridge, 2 Pa. 13; Wodock v. Robinson, 148 Pa. 507.

PER CURIAM, November 14, 1898:

We are clearly of opinion that McCain was not guilty of any fraud in paying over the money to the Gilpin estate. He had no knowledge of Johnston's ownership of the Wacherlie judgment, and was entitled to suppose that the judgment belonged to Gilpin. The right of action of Johnston to recover the money from McCain commenced in October, 1886, when McCain received it from Mr. Brandon. As McCain was guilty of no fraud there is no question in the case as to the postponement of the running of the statute until after the fraud was discovered, and hence at the end of six years from the time the money was received the statute became a bar to the plaintiff's claim. The plaintiff was himself to blame for not inquiring for his money long before 1886 and continually thereafter. Had he done so the true facts of the situation would have been discovered, and he would have recovered his money. It certainly would not be just to hold McCain responsible for a result which flowed from the plaintiff's neglect in this regard. We sustain the findings and conclusions of the learned court below which relate to this subject, and in doing so the case is disposed of on the plea of the statute of limitations.

Judgment affirmed.